UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                                    Case No. 8:13-bk-00745-MGW
                                                                          Chapter 11
Leslie P. Holdsworth,

    Debtor.
_____/

Sally Garcia, as Personal                                                 Adv. No. 8:13-ap-00265-MGW
Representative of Estate of
Samuel Garcia, III,

    Plaintiff,

v.

David W. Holdsworth, John
W. Holdsworth, and Holdsworth
Properties, LLC,

    Defendants.
_____/

**ORDER AND MEMORANDUM OPINION ON
APPLICABILITY OF CRIME-FRAUD EXCEPTION**

    The Defendants seek discovery of communications between the Plaintiff and her attorneys relating to a state court wrongful death settlement. The Plaintiff, naturally, claims those communications are protected from disclosure under the attorney-client and work product privileges. The Defendants, however, have invoked the crime-fraud exception to these privileges. The question before the court is whether the Defendants have presented a prima facie case that the crime-fraud exception applies. For the reasons discussed below, the Court concludes the crime-fraud exception does not apply. Accordingly, the Defendants' Amended Motion to Compel Discovery should be denied.[1]

---

[1] Adv. Doc. No. 16.

**Background**

<u>The Parties</u>

The Plaintiff in this proceeding is Sally Garcia. Sally, and her husband (Samuel Garcia, Jr.), are the parents of Samuel Garcia, III, who was killed in an accident caused by David Holdsworth (David was driving under the influence of alcohol at the time of the accident). The Defendants are David Holdsworth and his parents, Leslie Holdsworth and John W. Holdsworth, and a family business, Holdsworth Properties, LLC.

<u>Gravamen of the Complaint and Answer</u>

Sally Garcia (as a parent and personal representative) and Samuel Garcia sued the Defendants for wrongful death. The parties settled that case for approximately $1.8 million. Sally alleges that the Defendants breached the settlement agreement by failing to pay any of the amounts due from them under the agreement. She has now brought this proceeding to enforce the settlement agreement.

The Holdsworths have asserted duress as an affirmative defense to the breach of contract claim. According to the Holdsworths, the Garcias and their lawyers threatened adverse consequences in the criminal court if the Holdsworths did not agree to a financial settlement that was disproportionate in terms of what could have been recovered in a wrongful death action.

<u>The Settlement</u>

At the time the wrongful death case was pending, David Holdsworth was being charged with DUI manslaughter. So the settlement agreement was being negotiated while the DUI manslaughter case was pending. In fact, the timing of the settlement agreement (in the wrongful death case) and the plea and sentencing (in the DUI manslaughter case) were substantially

contemporaneous. The plea was entered on December 9, 2009; the settlement agreement was executed on December 14, 2009; and the sentencing hearing took place on December 18, 2009.

It appears that part of the bargained-for consideration for the settlement agreement was a request for leniency by the Garcias. In the letter, the Garcias asked the judge presiding over the criminal case to sentence David to jail for only one year. At the time, David was facing a maximum 15-year sentence, with a mandatory 4-year minimum (the sentence under the guidelines was 10.6 years). In exchange, the Holdsworths agreed to pay the Garcias $1.8 million. GEICO paid its $100,000 portion. The balance of $1.7 million has not been paid.

Despite a letter requesting leniency from the Garcias, David Holdsworth was sentenced to five years in prison. After the sentencing hearing, the Holdsworths immediately stopped payment on the initial settlement payment (which was given to the Garcias two days before sentencing) and disavowed any further obligation under the settlement agreement on the basis that it was induced by the Garcias and their attorneys through fraud, duress, coercion, overreaching, and extortion.

## The Discovery

This proceeding is now in the discovery phase, and the Holdsworths are seeking all communications between the Garcias' lawyers in the wrongful death case. The Holdsworths contend those documents should be produced under the crime-fraud exception to the attorney-client privilege. According to the Holdsworths, the Garcias extorted them under section 836.05, Florida Statutes. As proof of that extortion, the Holdsworths have submitted letters that the Garcias' attorneys sent to the attorneys for the Holdsworth during the months leading up to the settlement agreement.

The Holdsworths argue that the letters from the Garcias' counsel during that time period are sufficient to establish their prima facie case under the crime-fraud exception. In response, Sally Garcia has filed additional letters from the Holdsworths' lawyers that she argues demonstrate that the communications between the lawyers leading up to the settlement agreement did not rise to the level of fraud or a crime.

### The Letters

The letters between counsel for the respective parties span from March 19, 2008 (when a criminal defense attorney provided the representation letter to the Garcias' counsel) to December 16, 2009 (when the Garcias' lawyer sent a letter to the criminal court judge requesting leniency in sentencing). Throughout these negotiations, it appears that the criminal defense attorneys for David Holdsworth took the lead on behalf of all of the Defendants.[2]

The various letters between counsel during that time period addressed the following topics:

- The details of a $100,000 automobile insurance policy.

- The amount of the wrongful death settlement. The amount to be paid in satisfaction of the wrongful death claim was discussed throughout the period. In particular, counsel for the Holdsworths stated that the Holdsworths were working on "amassing a sizable restitution payment for your clients."[3]

- The Holdsworths' financial circumstances. In fact, the Holdsworths' financial circumstances were a major topic in

---

[2] During the time period leading up to the sentencing hearing, the Garcias were represented by Roland Santiago, William A. Gilbert, Garth L. Dano, and George A. Ahrend in the wrongful death case. The Defendants were represented by Joseph Kinman in the wrongful death case. Mr. Kinman appears to have been brought in by GEICO, the insurance company for the Holdsworths. The GEICO policy was only for $100,000 which they paid as part of the settlement. William Jung and Paul Sisco represented David in his criminal case and all the defendants with respect to the settlement negotiations. The Court will refer to the lawyers representing David in the criminal cases as "the Holdsworths' counsel" since they were taking the leading on the wrongful death settlement discussions.

[3] Adv. Doc. No. 19-2 at 3 of 49.

many of the letters between counsel. On the one hand, the Holdsworths' lawyers discussed the problems in the real estate industry (the Holdsworths' wealth appears to have been tied up in the real estate market). On the Garcias' part, they were insistent that any concessions as to the amount to be paid by the Holdsworths required full disclosure of their finances.

- The issue of an apology letter. The lack of an apology letter was discussed early on by the Holdsworths' lawyer. He stated that the reason one was not delivered "some time ago" was because of his instructions.[4]

- The possibility of bankruptcy. This topic was initially raised by Defendants' counsel.[5] This was discussed by the Garcias' counsel as a basis for seeking financial disclosure.[6]

- Scheduling of mediation.

- A dram shop action against the vendor that supplied the alcohol to David Holdsworth.

- Injuries that David Holdsworth suffered in the accident. The Garcias requested that David get an independent medical examination to evaluate any level of impaired mental capacity that might be relevant to the sentencing hearing.

- Ongoing discovery. There were numerous discussions about ongoing discovery being conducted between the parties.

- The terms of a "proposed stipulation for the criminal case [that the Garcias] would like [the Holdsworths] to consider."[7]

---

[4] Adv. Doc. No. 19-2 at 3 of 49; Adv. Doc. No. 16-5 at 2 of 30.

[5] Adv. Doc. No. 19-2 at 4 of 49.

[6] Adv. Doc. No. 16-5 at 2 of 30.

[7] Adv. Doc. No. 16-5 at 7 of 30 (March 24, 2009 letter from letter plaintiff's counsel to defendant's counsel).

- Who had primary responsibility for the case. There were discussions about which one of the numerous attorneys on each side would be primarily responsible for the case. In an August 19, 2009 letter, the Garcias' attorney, Garth L Dano, wrote to Paul Sisco and William Jung: "I would ask that you confer and decide which one of you will be primarily responsible for this case. That way, I will only need to speak with one attorney." Dano went on to say, "I also will be solely responsible for settlement negotiations from this point forward."[8]

The fact that there was a tie-in between the wrongful death settlement and the upcoming trial or sentencing in the criminal case was certainly obvious to all. In fact, there are various references to this tie-in in the letters drafted by the lawyers for both parties. In one instance, the Holdsworths' counsel, in response to "various letters threatening suit, passive restraint, etc.," stated: "Frankly I am not sure I understand their need, given the leverage you possess and what I thought was a productive meeting. I would perhaps understand it better if this were a simple civil lawsuit."[9] The Holdsworths' attorney also repeatedly referred to the proposed settlement amount as a "restitution payment"—the term typically used in the context of criminal cases rather than civil cases. The Holdsworths' counsel also noted "our clients respective interests remain concurrent, which, given the circumstances, is a plain reference to the wrongful death settlement incorporating a plea for leniency.

In a similar vein, the Holdsworths' counsel, in a June 29, 2009 letter communicating a global settlement offer, recites the proposed financial terms and then states: "This would involve resolution of both cases. If you think we are on the right track we can discuss the criminal case on a mediation phone call with the mediator. Any resolutions of the two cases would necessarily, of course, involve full disclosure to and approval by the State Attorney's Office." Indeed, the

---

[8] Adv. Doc. No. 16-5 at 19 and 30.

[9] Adv. Doc. No. 19-2 at 3 of 49.

specific tie-in between the criminal case leniency plea and the wrongful death settlement was referenced by the Garcias on more than one occasion:

- For example, in a June 17, 2009 letter from the Garcias' counsel to Defendants' counsel, the Garcias' counsel stated: "If we do not receive a substantial offer all negotiations will be over; we will forward our materials to the Prosecutor's office and move forward with our civil case."

- In a follow-up letter dated June 26, 2009, the Garcias' counsel stated "I will be in Tampa on Tuesday and intend to move forward on the civil matter as well as making contacts and preparations for assisting the prosecutor in the criminal case-assuming, of course, that we have not reached any type of agreement."

- And in a November 16, 2009 memo, the Garcias' counsel outlined financial alternatives for amounts to be paid by the Defendants and then concluded: "What does the Holdsworth family ask of the Garcias?"

- In an August 10, 2009 e-mail, the Garcias' counsel stated "The Garcias are unwilling to make any proffer to the court that David not go to prison for the rest of his life without first knowing what the extent of the brain injury is."[10]

- In a November 22, 2009 e-mail, the Garcias' counsel stated: "Paul, I need you to speak with more clarity on the criminal case and proposed plea and sentencing. Clarity to me means specifics and details. I'm fully aware nothing is in stone, but at minimum I am requesting you to spell it out so we can know where you want to start."[11]

- In a December 3, 2009 e-mail from the Garcias' counsel to Defendants' counsel, the following statement is made: "Let's plan for and anticipate this can be resolved before the 18th of December."[12]

---

[10] Adv. Doc. No. 16-5 at 13.

[11] Adv. Doc. No. 16-5 at 25 of 30.

[12] Docket 19-2 at 46 of 49.

- In a December 14, 2009 email from the Garcias' counsel, in which the settlement with the insurance company and the affidavit given in connection with the dram shop action was discussed, the Garcias' counsel concluded "I can deliver the original letter for Judge Lopez at that time as well."[13]

### Conclusions of Law

Rule 501, Federal Rules of Evidence, provides that state law governs the applicability of the attorney-client (and work product) privileges in a civil case pending in federal court if state law supplies the decision regarding a claim or defense.[14] Since that is the case here, it is state law that will be determinative of the privilege issues raised by the parties. Under the Florida Evidence Code, a client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications made in the rendition of legal services to the client.[15]

There is no lawyer-client privilege, however, when the services of a lawyer were sought and obtained to enable or aid the client in committing a crime or fraud.[16] This is known as the crime-fraud exception to the attorney-client privilege. In applying this exception, the dispositive question is whether the attorney-client communications are part of the client's effort to commit a fraud or crime.[17] The party invoking the crime-fraud exception has the initial burden of presenting a prima facie case that the crime-fraud exception exists.[18]

---

[13] Docket 16-5 at 26 of 30.

[14] Fed. R. Evid. 501.

[15] § 90.502(2), Fla. Stat.

[16] § 90.502(4)(a), Fla. Stat.

[17] *First Union Nat'l Bank v. Turney*, 824 So. 2d 172, 187 (Fla. 1st DCA 2001).

[18] *American Tobacco Co. v. State*, 697 So. 2d 1249, 1256 (Fla. 4th DCA 1997).

The burden then shifts to the party asserting the attorney-client privilege to demonstrate by a preponderance of the evidence that there is a reasonable explanation for the conduct in question.[19] It is up to the court to decide whether the explanation is sufficient to rebut the evidence presented by the party invoking the crime-fraud exception. If the court accepts the explanation, the privilege remains. Otherwise, the privilege is lost.[20]

The Court must now consider whether the Holdsworths have made out a prima facie case that the crime-fraud exception applies. As a starting point, it is not uncommon for a manslaughter case—DUI or otherwise—to be accompanied by a civil wrongful death action. Nor is it uncommon for pleas to be entered as part of the criminal prosecution and for wrongful death cases to be settled. This raises the overarching question of whether including a plea of leniency (in a criminal case) as part of a wrongful death settlement constitutes the crime of extortion under Florida law.

The crime of extortion occurs as a general proposition when one maliciously threatens— whether verbally or in writing—to accuse another of any crime or to expose another to disgrace with the intent to extort money or gain any pecuniary advantage with the intent to compel the person so threatened to do any act (or refrain from doing any act) against his or her will.[21] From my review of the plain language of the statutory definition of extortion (and the case law interpreting it), it is the Court's conclusion that there is no per se commission of extortion simply by including a plea for leniency in a wrongful death settlement.

---

[19] *Id.*

[20] *BNP Paribas v. Wynne*, 967 So. 2d 1065, 1067 (Fla. 4th DCA 2007).

[21] § 836.05, Fla. Stat.

On the other hand, the Court can see circumstances where threats of criminal prosecution could be malicious within the terms of the extortion statute. The Court has reviewed the three primary cases relied on by the Holdsworths: *BNP Paribas v. Wynne*,[22] *Gordon v. Gordon*,[23] and *Berger v. Berger*.[24] Those appear to be three of the leading cases discussing extortion in this—or least a similar—context. The Court has also reviewed numerous other cases discussing extortion in the context of one party attempting to gain a pecuniary advantage in a settlement. And from its review of all of those cases, the Court concludes there are three primary factors that should be considered when determining whether settlement negotiations constitute extortion.

Those three factors are: (1) whether any discussions about a criminal prosecution were incidental to the overall settlement, (2) whether any discussion of the criminal case was entirely one-sided or whether both sides viewed it as reasonable and to their advantage to connect the timing of the settlement of the wrongful death case with a plea for leniency in connection with the sentencing hearing, and (3) any other extrinsic evidence of malicious activity on the part of any party to the settlement.

For instance, in *Gordon v. Gordon*, the husband alleged that his wife extorted him into entering into a property settlement agreement. According to the husband, his wife knew he had not filed any tax returns for 15 years, she had previously used that information to extort money and gifts from him, and her attorney repeatedly stated during discovery that his tax returns would need to be produced if he didn't settle the case.[25] The Court also observed that the settlement

---

[22] 967 So. 2d 1065 (Fla. 4th DCA 2007).

[23] 625 So. 2d 59 (Fla. 4th DCA 1993).

[24] 466 So. 2d 1149 (Fla. 4th DCA 1985).

[25] 625 So. 2d at 60-61.

10

agreement treated the wife with extraordinary generosity.[26] On those facts, the court concluded the ex-wife had extorted the husband.

It is apparent from *Gordon*, that the discussion about any potential criminal prosecution was not incidental to the settlement discussion. Indeed, it was the central focus of the settlement: either the husband settled the case or his failure to file his tax returns was going to be exposed. The discussion in that case was entirely one-side. Again, it was a "do this or else" situation. There was no mutual benefit to the parties. And it is plainly apparent that the ex-wife's behavior was malicious.

Here, discussion of the criminal prosecution was incidental to the settlement. It came up because the civil and criminal cases were pending at the same time. This is not a case where—like in many cases where courts have found extortion exists—one party brings the threat of criminal prosecution up out of the blue to gain negotiating leverage in a settlement. In fact, the Garcias did not threaten to bring criminal charges here. Those charges were already pending. At worst, they threatened to turn over some additional information to the state attorney and not cooperate in the sentencing. It is not clear, however, that the Garcias had any information that the state attorney did not already have. Nor is it clear that the information the Garcias had would have led to any additional charges. In any case, the Court concludes from its review of the entirety of the settlement letters offered into evidence that the discussion of the criminal case was merely incidental to the settlement.

Moreover, the discussion here was not one-sided at all. Both parties discussed the possibility of a global settlement. There is repeated discussion back-and-forth about a plea of

---

[26] *Id.*

leniency as part of the wrongful death settlement. And it is apparent that the settlement was to both parties' advantage.

Finally, there is no evidence of malicious behavior on the part of the Plaintiff. Perhaps the best evidence of that is the statement by the Defendants' lawyer during settlement negotiations that the parties' interests are "concurrent."

## Conclusion

As Judge Proctor recognized in *In re Warner*, the attorney-client privilege is of vital importance to the legal system.[27] An attorney's ability to render sound legal advice or advocate for his or her client depends on the attorney being fully informed. The attorney-client promotes full disclosure by the client by protecting the client's confidential communications. Clients would not be willing to fully disclose information to their attorneys if their confidential communications were routinely disclosed.

For that reasons, the Holdsworths must make a prima facie showing that the transaction that the communications relate to is fraudulent in order to invoke the crime-fraud exception. That means the Holdsworths must offer evidence that—if unrebutted—would result in a finding of fraud. As the United States Supreme Court in *Clark v. United States* said: "To drive the privilege away, there must be 'something to give colour to the charge.'"[28] It is the Court's conclusion that there is nothing here to give "colour to the charge." Accordingly, the Court concludes that the Holdsworths are not entitled to invoke the crime-fraud exception.

Importantly, the Court's conclusion with respect to the existence of extortion is limited to this discovery context. The Court has only reviewed the evidence offered to date by the parties in

---

[27] 87 B.R. 199, 201 (Bankr. M.D. Fla. 1988).

[28] 289 U.S. 1, 15 (1933).

making its determination. That evidence is sufficient for resolving this discovery issues. But nothing in the Court's ruling today precludes the Holdsworths from raising the affirmative defense of duress or unconscionability. Accordingly, it is

**ORDERED**:

1. The Defendants' Amended Motion to Compel Discovery is DENIED.

2. The crime-fraud exception to the attorney-client privilege does not apply to the settlement negotiations with respect to the settlement of the state court wrongful death action.

**DONE** and **ORDERED** in Chambers at Tampa, Florida, on May 21, 2013.

*/s/ Michael G. Williamson*
_____
Michael G. Williamson
United States Bankruptcy Judge

Attorney Luke Lirot is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.